TOLEDO ELECTRIC STREET RAILWAY CO. V. JOHN WESTENHUBER.

1. STREET RAILWAY CROSSINGS—EQUAL RIGHTS.

A company operating a street railway and the driver of a team of horses have equal rights at a street crossing, and the latter has the right, being at the crossing first, to go over the crossing ahead of the car, notwithstanding its speed must be retarded to prevent a collision.

2. DUTY OF PERSON ATTEMPTING TO DRIVE ACROSS.

It is the duty of the driver of a loaded wagon about to cross street car tracks at a crossing, upon observing the rapid approach of a street car, to take into consideration the fact that it can neither turn out, nor stop instantly, but if, upon such consideration, he enters upon the track when the car is so far away and approaching at such speed that, by the exercise of reasonable diligence, it can be stopped, he is not thereby guilty of negligence.

3. RULES APPLIED—NEGLIGENCE OF RAILWAY COMPANY.

Where it appears that the driver of a loaded wagon attempted to cross a street railroad track when an approaching car was about two hundred feet distant, and that he could be seen by the motorman, and it also appears that the latter did not immediately slacken the speed of the car, but waited until very near the crossing before attempting to do so, and it further appears that, under such circumstances, the wagon moved so far across the track that only a rear wheel was caught by the car, it is obvious that the car might have been stopped by the exercise of reasonable diligence, and for injuries resulting from a failure to stop it the street railway company is liable.

**4. OPINIONS AS TO SPEED OF CAR COMPETENT.**

Where the speed of a street car causing an injury is called in question, the opinions of persons observing the movement of the car are competent, as relating to a matter of common knowledge, and especially where such persons appear to have made observations of the movements of similar cars.

**5. PLEADING—RECOVERY FOR MEDICAL ATTENDANCE.**

Where the petition in an action for personal injuries sets forth that plaintiff has been put to great expense for nursing, medicines and medical attendance in connection with all other damages by him sustained, but does not set forth the precise amount thereof separately, evidence of the value of medical services is admissible, in the absence of a motion to make such petition more definite and certain in this particular.

HEARD ON ERROR.

*Smith & Baber*, for plaintiff in error.

*Hurd, Brumback & Thatcher*, for defendant in error.

PARKER, J.:

This is a proceeding brought to reverse a judgment obtained by Westenhuber against the street railway company in an action for personal injuries.

It appears from the evidence that the plaintiff below was riding upon a heavy beer wagon, driving the team, and was crossing the track of the defendant company on Huron street at Walnut street. A car approaching from the north came in contact with a hind wheel of the wagon on which he was riding, knocked the wagon over to the side of the street, and unloaded the beer kegs, both full and empty, very suddenly upon the street, and threw the plaintiff to the ground and injured him. The jury returned a verdict in his favor for $1,000, upon which judgment was entered.

For the reasons stated by Judge Haynes this morning, I will not take the time to discuss this case very fully, but I will do so briefly. The driver with his team was going towards Summit street—towards the river. That would be in a southeasterly direction. It appears that about the time he came upon Huron street the car was from one hundred and fifty to two hundred feet away, approaching the crossing; that when he came so far upon the street that he could see the car coming, that brought his horses very near to the street railroad track; that he did not stop, but continued on his way. The car did not stop, but continued on its way. When the car came near to him he endeavored to hurry up his horses, by slapping them with the lines, but the car, as I have said, caught a hind wheel of his wagon.

There is testimony tending to show, and upon it the jury must have found, that the motorman did not undertake to slack the speed of the car or stop it in time to prevent this collision. That was a disputed point in the case, but we think the evidence tends very fairly to show that he did not exert himself to stop his car until he approached very near to the crossing, and that then, when he came to try to stop his car, it was too late, he was too near to the wagon, and although he did his best then, perhaps, the car caught a hind wheel of the wagon.

From the evidence the jury may have found that the motorman did not exercise reasonable care, did not make a reasonable effort in due time to stop his car or slack its speed to avoid the collision. The evidence tended to show that he did not turn off the power and apply the brakes when nearing the crossing, and that if he had done so when plaintiff was

going upon the crossing in full view of the motorman, while the car was one hundred to two hundred feet distant, the collision might have been averted. So we think that the negligence of the company is fairly made out by the evidence.

It is contended, however, that the driver was guilty of contributory negligence in entering upon the tracks, because before his horses came upon the track he distinctly saw the car approaching. not more than two hundred feet away; that he saw it approaching at a rate of speed that would run him down, unless the speed of the team should be very much accelerated or the speed of the car should be retarded; yet he entered upon the track to cross over, and it is said that in doing so he was negligent.

To attempt to drive across a track ahead of a street car when the car is so far away that, by the exercise of reasonable care on the part of the operators, it might be stopped before reaching the place of crossing, is not negligence, in our opinion. The rights of the street car company and of the driver of the team being equal at the crossing, he had a right to go over the crossing ahead of the car, notwithstanding the fact that his doing so would require that the speed of the car must be retarded to prevent a collision. The one first at the crossing had the right to precede the other in going over the same. It is plain, the driver of the team must take into consideration the fact that the street car cannot turn out, it must remain upon the rails, and he must take into consideration the fact that it cannot stop instantly, that if it is going at a high rate of speed it may require considerable distance for it to stop; but taking all these things into consideration, if he enters upon the track when the car is so far away as that it may, by the exercise of reasonable diligence on the part of the operator, be stopped, he is not in our opinion guilty of negligence in thus entering upon the track.

If the driver could go upon and move more than half way over the crossing before the arrival of the car, when the car was going at full speed, obviously the car might have been controlled by the motorman, so that the driver could have passed entirely over without a collision. The driver was not bound to wait for the car to pass first, and was not guilty of negligence in going upon the track ahead of the car under such conditions.

It is claimed that the court erred in permitting unqalified persons to testify as experts to the number of miles per hour the car was moving. This testimony was given by persons who observed the movement of the car on this particular occasion, and they seem to have been persons who had made observations of the movements of similar cars and of horses. We are not prepared to say that persons may not testify to their opinions or judgment of the speed of cars on certain occasions, when they observe them. They may testify to the speed of a horse or the speed of a man running, especially where it is shown that they have made such observations upon other occasions, and are better able than persons who have not made such observations to make a fair estimate of the rate of speed. We think this is a matter of common observation that admits of this method of proof.

It is said that the court erred in admitting evidence as to the value of medical services without pleading on the subject. The petition sets forth that:

"By reason of the injuries so sustained by plaintiff, he was for a long time confined to his bed and kept from his work, has lost a good

position where he was earning large wages, and was put to great expense for nursing, medicines and medical attendance.

" Plaintiff further says that the injuries so sustained by him are permanent. That he cannot now undergo severe labor, causing him great loss in his earning capacity; and he has suffered and will continue to suffer great mental and physical pain and anguish.

" All to plaintiff's great damage, to-wit, $10,000.

" Wherefore plaintiff prays judgment against the defendant in the sum of $10,000 and costs."

So that it will be seen that he has set forth that he has been put to great expense for nursing, medicines and medical attendance; but he does not set forth the precise amount of expense for either of these items or for all of them, but the expense for the nursing, medicines and medical attendance, and for all other damages which he says has resulted to him, is put at $10,000.

We think that, in the absence of a motion to make more definite and certain, this is a pleading that authorized evidence of the amount of expense incurred or the amount expended for medical attendance and medicines.

It is said that the court erred in its charge to the jury in leaving all questions of damage to their determination without reference to the evidence, and this is urged particularly with reference to the medical attendance. We do not think that that criticism is well founded. The court said to the jury that they must be guided by the evidence. To be sure, when it comes to a particular paragraph in which he speaks of the damage, there is a somewhat loose utterance upon that subject; but we do not think that would be misunderstood by the jury, or that they would understand that they would be at liberty to conjecture what the medical attendance or medicines amounted to, but rather that they would be guided by what the court had in the first instance said to them with respect to their being bound by the evidence.

Finding no error in this record, the judgment of the court of common pleas will be affirmed.